IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD WALTER FLEMING, | ) | |
| | ) | |
| Petitioner, | ) | No. 12 C 1845 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| UNITED STATES, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Richard Walter Fleming filed a pro se motion pursuant to 28 U.S.C. § 2255, raising six claims challenging the 400-month sentence this court imposed on March 4, 2011, after petitioner pleaded guilty to five counts of producing child pornography. The government agrees that an evidentiary hearing is appropriate with regard to one of petitioner's six claims: that petitioner's appointed counsel, Michael F. Clancy, failed to comply with petitioner's alleged request to file a notice of appeal. The court will therefore set an evidentiary hearing with respect to that claim. The parties' factual dispute on a second claim—that petitioner's counsel was ineffective for failing to inform him, and the court, that he would not receive "jail credit" for time he spent awaiting sentencing in this case—warrants an evidentiary hearing as well. The court denies the petition with respect to petitioner's four other claims.

**Pretrial Detention Credit**.

Petitioner claims that his trial counsel was constitutionally ineffective for incorrectly advising him on the manner in which the Bureau of Prisons ("BOP") would calculate his credit for the time he was detained while awaiting sentencing in this case. According to petitioner, counsel told him at their first meeting (the date of which is unspecified) that all of the time he spent in pretrial custody in this case would be applied to his sentence. But as it turned out, if in

fact counsel gave this advice he was incorrect. As evidenced by the BOP's "computation data" attached to the petition, when the BOP calculated petitioner's concurrent sentence (this court imposed a 400-month sentence, to run concurrently with petitioner's 240-month Texas sentence previously imposed on November 4, 2008), he received no credit—in either case—for the period he spent in custody from the time he was sentenced in Texas to the time he was sentenced here. The BOP gave petitioner "jail credit" from March 8, 2007 (when he was first detained), to November 4, 2008, when he was sentenced in the Texas case. Petitioner did not receive time-served credit for the 28 months and 1 day between his Texas sentencing and his sentencing in this court.

18 U.S.C. § 3585(b) provides that "[a] defendant shall be given credit" for time he is detained "prior to the date the sentence commences" either "as a result of the offense for which the sentence was imposed" or "as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed." The only exception to receiving such time served credit is when that time has already "been credited against another sentence." Apparently relying on this provision (petitioner assumes this; the government does not even mention it), the BOP credited petitioner's time served awaiting sentencing in the Texas case against that sentence, but determined that he was ineligible to receive time-served credit for the 28 months he spent in custody waiting to be sentenced in this court. It is not entirely clear—the government's response does not provide any illumination on this point—why petitioner would not be entitled to time-served credit in this case for the time between his sentencing in the Texas case and his sentencing in this one.

Petitioner suggests that once he began to serve his Texas sentence (on the date he was sentenced in that court), § 3585(b)'s mandated jail credit ceased to apply. He reasons that because he was serving the Texas sentence while awaiting sentencing here, "§ 3585 would preclude [him] being credited for the time served while awaiting pre-trial." But this is not obvious from the statutory text, which <u>requires</u> time served credited to be imposed for "<u>any time</u>" a defendant is detained "as a result of any of any other charge for which [petitioner] was arrested <u>after</u> the commission of the offense for which the sentence was imposed." (Emphases added.) Petitioner was arrested on the Texas charges in 2007, well after the commission of the instant offense in 2001. Thus, for the BOP to <u>not</u> award him this credit, it would have had to conclude that he was not detained in the Texas case—but then the agency would also have had to determine that his detention between November 3, 2008, and March 4, 2011, was also not "as a result of the offense for which the sentence was imposed" (§ 3585(b)'s other prong). Other than his having been detained for a third, unspecified offense, or an interpretation that § 3585's "detention" covers purely presentence detention situations (although it is unclear whether petitioner began serving <u>either</u> sentence until after his sentencing in this court[1]), such a conclusion would be problematic.

But rather than attempt to explain the BOP's calculations, the government contends that this claim cannot provide a basis for ineffective assistance because calculating jail credit "is a difficult process that is frequently unpredictable," and in this case the BOP's calculation was "unknowable." Petitioner disputes that view, argues that his counsel should have known that the BOP would interpret § 3585(b) this way, and asserts that had he known that the BOP was not

---

[1] The BOP's "Computation Data" indicates that the "date committed" was May 2, 2011.

going to give him credit for the time he spent in pretrial custody in this case, he would have invoked his Speedy Trial Act rights and proceeded to trial. But under either account, counsel's alleged guarantee that petitioner would receive time-served credit was erroneous. If the government is correct, and it was impossible to anticipate the BOP's calculations, counsel should not have assured petitioner that he would receive time-served credit. If petitioner is correct that the BOP's calculation is correct, counsel's inaccurate legal advice was clearly deficient. And if through the administrative process (discussed below) it is ultimately determined that petitioner is entitled to the credit for time served that his counsel allegedly guaranteed, his counsel's advice would have been correct, and petitioner would have suffered no prejudice.

Therefore, petitioner may have a colorable ineffective assistance claim. To succeed on this claim, petitioner must show that "his counsel's performance fell below an objective standard of reasonableness and that this deficiency prejudiced him." Strickland v. Washington, 466 U.S. 668, 694 (1984)). The court must first determine what advice petitioner's attorney actually gave to him. If the court finds in favor of petitioner on this issue, it will address prejudice. If it is true, as the government claims, that no one could have known what the BOP would do, the petitioner may well be able to show prejudice. But he cannot do so on this limited record. Petitioner describes the first meeting with his counsel, but no subsequent meetings. An evidentiary hearing is necessary to develop this record and enquire into what petitioner's counsel communicated to him.

To successfully advance this claim, petitioner would also need to establish that, were it not for counsel's errors, he would have insisted on a trial. See Hill v. Lockhart, 474 U.S. 52, 58-59 (1985) (interpreting Strickland's prejudice requirement to demand, in the context of a

4

defendant claiming that his counsel's ineffective assistance induced him to plead guilty, that such a defendant demonstrate that, but for counsel's errors, he would have proceeded to trial); see also Strickland, 466 U.S. at 694 (requiring a defendant claiming that his counsel rendered ineffective assistance to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). To do so, he would need to show that his counsel's failure to predict how the BOP would calculate the sentence (if counsel gave the advice petitioner claims he did) "was a decisive factor in [his] decision" to plead guilty rather than proceed to trial. Wyatt v. United States, 574 F.3d 455, 458 (7th Cir. 2009) ("[A] defendant's mere allegation that he would have chosen a path other than the . . . plea is insufficient by itself to establish prejudice.").

The court notes that the government's description of the "unknowable" BOP decisionmaking is troubling—and that the government did not make this point at the sentencing or otherwise attempt to correct this court's stated belief that petitioner would receive time-served credit for the previous two-plus years he had spent awaiting that sentencing. The statutory text does not appear to leave room for discretion. If the government is incorrect, petitioner's trial counsel may well have been right, and this is simply a BOP error.[2] But again, on this

---

[2] As both parties recognize, a challenge to the BOP's calculations is not a proper subject of a § 2255 petition. United States v. Strickland, 310 Fed. App'x 32, 34 (7th Cir. 2009). (Although the government suggests that petitioner is attempting to raise such a claim in the instant petition, petitioner confirms that he "never stated a challenge to the method by which the BOP calculated his credit for jail time served.")

After sentencing, the BOP—not this court—has exclusive jurisdiction to grant credit for time served before sentencing. 18 U.S.C. § 3585(b); United States v. Koller, 956 F.2d 1408, 1417 (1992); United States v. Wilson, 503 U.S. 329, 335 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."). Thus, petitioner must use the BOP's administrative remedies to
(continued...)

5

undeveloped record and in light of the parties' contrary factual assertions, the court cannot come to that conclusion. Thus, an evidentiary hearing is necessary to resolve the parties' factual dispute as to how the BOP calculates time-served credit in this type of situation.

As part of this claim, petitioner also challenges his trial counsel's failure to object to this court's observation at the sentencing that, at the time of his release, petitioner would be "about" the same age as the judge's then-present age. Petitioner claims that this statement indicated that the court intended to impose a sentence of about 282 months (accounting for good time credit but not time served, because according to the petitioner's account, the court knew that jail time credit would be awarded), and thus that his counsel should have informed the court that the 400-month sentence exceeded the intended sentence—both because of the court's misapprehension regarding the time-served credit and, petitioner surmises, petitioner's current age. The court was aware of petitioner's age, so this aspect of his claim is unavailing. Petitioner assumes that the court believed that the BOP would not give him time-served credit and thus, to meet the court's stated objective of awarding that credit, it intended to subtract that amount of time—2 years by the government's calculation and 44 months in petitioner's—from the sentence it would otherwise have imposed. Again, the government assumes that the court and counsel could not possibly have

---

²(...continued)
challenge that agency's determination regarding credit for time served. After exhausting the BOP remedies, petitioner's recourse is to file a petition under 28 U.S.C. § 2241. Koller, 956 F.2d at 1417 ("[T]he district court has jurisdiction only to review the Attorney General's decision pursuant to 28 U.S.C. § 2241.") (citation omitted). Petitioner must file that petition in the district in which he is incarcerated (currently the Southern District of Illinois) against the warden of his prison. Strickland, 310 Fed. App'x at 34 (citations omitted).

predicted how the BOP would make that decision, but it presents no argument or evidence to support that position.[3]

Should the evidentiary hearing reveal that the government's position on the BOP is <u>correct</u>, petitioner may be able to advance an ineffective assistance claim on this ground. And should the evidence at the hearing show that defense counsel misunderstood § 3585(b) and thus failed to argue that petitioner's sentence should be reduced to account for the fact that he would not receive credit for the time he spent awaiting that sentencing, petitioner may also be able to advance an ineffective assistance at sentencing claim.

Thus, for the foregoing reasons, the court determines that an evidentiary hearing is necessary to resolve petitioner's claim that his counsel was ineffective for failing to correctly apprehend how § 3585(b) would be applied to petitioner's jail credit.

**Petitioner's Other Claims**

Petitioner's first meritless claim is that his right under the Double Jeopardy Clause to avoid multiple punishments for the same offense was violated when this court and the court presiding over defendant's case in the Western District of Texas—where petitioner was earlier convicted of and sentenced for possession of different images of child pornography—considered some of the same evidence. But petitioner's claim is largely based on the alleged impropriety of the proceedings in the Western District of Texas, which this court may not review. Petitioner

---

[3] The government also argues that this claim is meritless because it is well-established that the BOP, not this court, calculates release dates. While that is true, it is beside the point. The court's estimation of petitioner's release date, which took into account its preference that petitioner receive credit for time served, is certainly not binding on the BOP. But petitioner's claim is that counsel should have objected when the sentence imposed was inconsistent with the court's stated desire that petitioner be released when he was approximately 67—not that counsel failed to inform the court that the BOP had the ultimate authority to award jail credit.

7

must raise this claim in the Texas court. To the extent that petitioner is claiming that his sentence (or conviction) in this court violates the Double Jeopardy Clause's proscription against being punished twice for the same offense, his claim is legally unsustainable.

As petitioner acknowledges, his convictions in this court and in the Western District of Texas were for different offenses with distinct elements: manufacturing child pornography in the former, and possession of child pornography in the latter. He nonetheless appears to claim that this court improperly considered some of the facts at issue in his Texas case (although his reply brief drops this issue and elaborates on only the Texas court's perceived errors), but it is well established that the Double Jeopardy Clause is not violated when a defendant is sentenced for conduct that a previous sentencing court had considered as relevant conduct in sentencing the defendant for a separate offense. Witte v. United States, 515 U.S. 389 (1995); see id. at 399 ("[U]se of evidence of related criminal conduct to enhance a defendant's sentence for a separate crime within the authorized statutory limits does not constitute punishment for that conduct within the meaning of the Double Jeopardy Clause."). Thus, the fact that the Western District of Texas considered as relevant conduct the production of child pornography for which petitioner was subsequently convicted and sentenced in this court does not constitute Double Jeopardy.

Petitioner also contends that his confession to agents in the Western District of Texas was involuntary, and that his attorney rendered constitutionally ineffective assistance when he failed to move to suppress that confession. As the government correctly points out, however, petitioner waived this issue when he entered an unconditional guilty plea. The Seventh Circuit has explained that "an unconditional guilty plea waives all non-jurisdictional defects occurring prior to the plea." Koons v. United States, 639 F.3d 348, 351 (7th Cir. 2011). And regardless,

8

petitioner cannot show, as he must to establish ineffective assistance on this basis, that his suppression motion would have been meritorious. See United States v. Bustamante, 367 Fed. App'x 708, at *1 (7th Cir. 2010). Petitioner alleges that he would have gone to trial had his counsel told him that he could have challenged the voluntariness of the inculpatory statements he made to the FBI, but as discussed above, he "must do more than simply allege that he would have insisted on going to trial." Hutchings v. United States, 618 F.3d 693, 97 (7th Cir. 2010). Absent "objective evidence," such as "the nature of the misinformation provided by the attorney and the history of plea negotiations," the court cannot conclude that counsel's alleged ineffective assistance led petitioner to plead guilty. Id.

Petitioner next claims that his counsel was ineffective for failing to challenge unspecified facts in the PSR. But petitioner has not identified, in either his petition or reply brief, the facts he believes counsel failed to challenge. Nor has petitioner attempted to explain how the PSR's inclusion of those facts prejudiced him. Therefore, the court cannot conclude that his counsel—who did, in fact, file objections to the PSR—was constitutionally deficient on this basis.

Finally, petitioner claims that his counsel was ineffective for failing to be present during his presentence interview after petitioner asked him to attend. Because, however, the Sixth Amendment right to counsel does not extend to presentence interviews, petitioner cannot establish that he received constitutionally ineffective assistance at the presentence interview.[4]

---

[4]Despite this court's suggestion that counsel arrange to be present at the interview, petitioner's attorney wrote to petitioner (in October 25, 2010, letter attached to the petition): "Probation Officer Tracy Phillabaum will come to see you soon. Please cooperate and answer all of her questions."

United States v. Hodges, 259 F.3d 655, 660 (7th Cr. 2001) ("PSR interviews are not critical stages in the proceedings where the presence of an attorney is required . . . .") (citing United States v. Kinsey, 917 F.2d 181, 183 (5th Cir. 1990) ("Reasoning that a presentencing interview is not a critical stage of the proceedings, this circuit has refused to recognize a right to counsel during a defendant's presentencing interview with a probation officer.")); see also Searle v. Rapelje, No. 1:09-CV-13369, 2011 WL 3918951, at *8 (E.D. Mich. Sept. 7, 2011) (collecting cases).

Petitioner relatedly argues that his counsel's absence at the presentence interview resulted in a violation of petitioner's Fifth Amendment right against self-incrimination. He explains that at the outset of the interview, he notified the interviewing officer that he wished to have counsel present, and he claims that this statement should have triggered the protections of Miranda v. Arizona, 384 U.S. 436 (1966). But Miranda was not intended to apply to situations like voluntary, non-adversarial presentence interviews conducted by neutral parties. Rather, "[t]he warning mandated by Miranda was meant to preserve [the Fifth Amendment] privilege during 'incommunicado interrogation of individuals in a police-dominated atmosphere.'" Illinois v. Perkins, 496 U.S. 292 (1990) (quoting Miranda, 384 U.S. at 445). As the Seventh Circuit has thus held, an officer conducting a presentence interview—in which a defendant is not required to participate—is not required to give a defendant Miranda warnings before conducting the interview. Williams v. Chrans, 945 F.2d 926, 951-52 (7th Cir. 1991). If petitioner had wished to postpone the interview until counsel could be present, or to not participate at all, he was free to do so.

Finally, petitioner argues that his counsel should have been present at an interview with agents from the FBI's Behavioral Analysis Unit—an interview petitioner requested. But petitioner fails to claim that he was prejudiced as a result of counsel's absence during this interview. He claims that at his sentencing, "the prosecutor made comments to the effect that [petitioner] was now changing his comments regarding his relevant conduct based on the information gathered in the Behavioral Study," but there is no indication that those comments affected petitioner's sentence. This claim is therefore meritless.

## CONCLUSION

For the foregoing reasons, the court grants petitioner an evidentiary hearing on two of his claims: that his counsel was ineffective for failing to comply with his request to file a notice of appeal, and that his counsel was ineffective for inaccurately assuring him that the BOP would credit the time he spent in pretrial detention against his sentence (and for failing to object to the sentence imposed when the court stated its intention that petitioner receive that credit). The petition is denied as to the other four claims. Pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the court appoints the Federal Defender Program to represent petitioner. The case is set for a status hearing on September 25, 2012, at 9:00, for the purpose of setting a date for the evidentiary hearing.

**ENTER:     August 29, 2012**

_____
**Robert W. Gettleman
United States District Judge**